THE STATE, EX REL. CINCINNATI DRUM SERVICE, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as State, ex rel. Cincinnati Drum Service, Inc., *v.* Indus. Comm. (1990), 52 Ohio St. 3d 135.]

(No. 89-553—Submitted March 27, 1990—Decided June 27, 1990.)

*Taft, Stettinius & Hollister* and *Robert S. Corker,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Alys M. Portman,* for appellee Industrial Commission.

*Kondritzer, Gold & Frank Co., L.P.A., James C. Crowley* and *Lane N. Cohen,* for appellee Larry Allen.

DOUGLAS, J. The commission determined that appellant violated Ohio Adm. Code 4121:1-5-04(C)(2) and (3). Ohio Adm. Code 4121:1-5-04(C)(2) provides:

"* * * Vertical and inclined belts and their pulleys seven feet or less above floor or platform level *shall be guarded* in accordance with appendix I." (Emphasis added.)

Ohio Adm. Code 4121:1-5-04(C)(3) requires:

"* * * Vee belts and their pulleys, where exposed to contact, *shall be guarded.*" (Emphasis added.)

Appellant's initial contention is that Ohio Adm. Code 4121:1-5-04 (C)(2) pertaining to vertical and inclined belts and their pulleys is not applicable to this case. Appellant's contention is not relevant to this appeal. It is clear that the safety requirement common to Ohio Adm. Code 4121:1-5-04(C)(2) and (3) is that the belts and pulleys "shall be guarded." "Guarded," as defined in Ohio Adm. Code 4121:1-5-01(B)(17),[1] requires: "[t]he object is covered, fenced, railed, enclosed, or otherwise shielded from *accidental contact.*" (Emphasis added.)

Thus, regardless of the type of

---

[1] The definition of "guarded" is now found in Ohio Adm. Code 4121:1-5-01(B)(70).

belt, the question we are presented with is whether the commission properly determined that appellant failed to *guard* the belts and their pulleys from *accidental contact.*

Appellant also contends that Ohio Adm. Code 4121:1-5-04(C)(3) is not specific and does not clearly apprise it of its legal obligation. Appellant asserts that under this safety requirement, vee belts and their pulleys are to be "guarded" only in a location that is accessible to employees while performing their regular or assigned duties and only to the extent necessary to protect them against "accidental contact." Appellant argues that because Allen's act of touching the vee belts was "intentional," it could not, by definition, be "accidental" within the meaning of the safety regulation. We disagree.

This court has held that "substantially guarded," "unguarded," and "[f]oot treadles used to activate power presses shall be guarded" are specific. See *State, ex rel. Jeep Corp.,* v. *Indus. Comm.* (1989), 42 Ohio St. 3d 83, 537 N.E. 2d 215. Furthermore, a safety provision need only set forth a specific requirement and a specific result to be accomplished. *Id.* at 84, 537 N.E. 2d at 217. We find Ohio Adm. Code 4121:1-5-04(C)(3) meets these tests and adequately apprises appellant of its duty to guard the belts and pulleys from accidental contact.

Next, appellant contends that the court of appeals erred when it found "some evidence" supporting the commission's finding that appellant failed to guard its vee belts against "accidental contact." Again, we disagree.

Section 35, Article II of the Ohio Constitution provides that the "board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer

to comply with any specific requirement for the protection of the lives, health or safety of employes * * * *and its decision shall be final* * * *." (Emphasis added.) The determination of a disputed factual situation, as well as interpretation of a specific safety requirement, is within the final jurisdiction of the commission, subject to correction by action in mandamus upon a showing of an abuse of discretion. *State, ex rel. Morrissey,* v. *Indus. Comm.* (1985), 18 Ohio St. 3d 285, 289, 18 OBR 336, 339, 480 N.E. 2d 810, 814. It is well-settled that if the commission's decision is supported by "some evidence," it has not abused its discretion and mandamus will not lie. *State, ex rel. Burley,* v. *Coil Packing, Inc.* (1987), 31 Ohio St. 3d 18, 31 OBR 70, 508 N.E. 2d 936.

We are mindful that a device need not be foolproof in order to satisfy a specific safety requirement. The purpose of a specific safety requirement is to provide reasonable but not absolute safety for employees. *Jeep, supra,* at 84, 537 N.E. 2d at 217. Furthermore, a VSSR award is deemed a penalty to the employer and, therefore, is subject to a rule of strict construction with all reasonable doubts concerning the interpretation of the claim to be construed in favor of the employer. *State, ex rel. Burton,* v. *Indus. Comm.* (1989), 46 Ohio St. 3d 170, 545 N.E. 2d 1216.

In the case at bar, the commission based its conclusions on photographs, signed statements and affidavits of co-workers. The commission specifically determined that Allen was "* * * trying to save time in correcting the problem." Furthermore, Allen "intentionally placed his left hand on the pulleys and belts to slow them down * * * so that he could open the back door to the machine and free the jammed barrel." Also, Allen was "* * * performing his regular job duty

when the accident occurred." Moreover, the commission found that "* * * the left hand side of the belts and pulleys in question *were [sic] not covered.*" (Emphasis *sic.*)

Ohio Adm. Code 4121:1-5-04(C)(3) specifically requires vee belts and their pulleys "* * * where exposed to contact, shall be guarded." This requires that if the device is accessible to the employee in performance of his regular or assigned duty, it must be adequately guarded from accidental contact. Guarding the belts and pulleys against accidental contact does not impose a duty on the employer to provide a guard that is effective against *any* contact, but only to provide a guard where accidental contact could reasonably be expected.

Upon review, we find the photographs, signed statements and affidavits constituted "some evidence" that appellant violated a specific safety requirement by failing to guard the left side of the belts where accidental contact could reasonably be expected.

Appellant further contends the absence of a guard was not the cause of Allen's injury. Appellant urges the proximate cause of the injury was Allen intentionally placing his hand on the belt. We do not agree.

Although Allen's contact with the belt was intentional, he did not intend to be injured as a result of the contact. If we would accept appellant's argument, we would come to an unjust and illogical conclusion that Allen, while performing his regular assigned duties, did not accidentally injure himself but, in fact, intended to cause injury to his person. In *State, ex rel. Harris,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 152, 153, 12 OBR 223, 224, 465 N.E. 2d 1286, 1288, we stated:

"The commission has the discretion to interpret its own rules; however, where the application of

those rules to a unique factual situation gives rise to a patently illogical result, common sense should prevail."

Furthermore, as a general rule, the *proper focus* in determining whether a VSSR award should be made remains on the conduct of the employer. The focus should not be on the conduct of the employee. See *State, ex rel. Cotterman,* v. *St. Marys Foundry* (1989), 46 Ohio St. 3d 42, 47, 544 N.E. 2d 887, 892. This, however, does not mean an employee's conduct will never be a factor in a VSSR award. For instance, if an employer fully complies with the applicable safety regulations, and an employee's unilateral act violates the safety requirement, a VSSR award can be denied. See *State, ex rel. Frank Brown & Sons, Inc.,* v. *Indus. Comm.* (1988), 37 Ohio St. 3d 162, 524 N.E. 2d 482; and *Burton, supra.*

The commission determined, and we agree, that appellant violated a specific safety requirement by failing to guard the left side of the vee belts and pulleys. Furthermore, Allen had free access to the left side of the belts and pulleys and did not deliberately avoid a guard. The employee was able to place his hand, intentionally or otherwise, on the exposed area of the belt, because of appellant's failure to comply with a specific safety requirement.

Accordingly, we conclude that the failure of appellant to provide a guard on the exposed side of the vee belts and pulleys was the proximate cause of Allen's injury.

Based on the foregoing, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, H. BROWN and RESNICK, JJ., concur.

MOYER, C.J., HOLMES and WRIGHT, JJ., dissent.

HOLMES, J., dissenting. The majority here cites the proper standard to be applied in specific safety requirement cases but then proceeds to avoid its application. An award for a violation of a specific safety requirement is deemed a penalty against the employer, and thus is subject to a rule of strict construction with all reasonable doubts concerning the interpretation of the safety requirement to be construed against its applicability to the employer. *State, ex rel. Watson,* v. *Indus. Comm.* (1986), 29 Ohio App. 3d 354, 358, 29 OBR 483, 487, 505 N.E. 2d 1015, 1019. As stated correctly within the court of appeals' majority opinion, but then incorrectly applied by such majority, "under this standard, the requirement of guarding the belt and pulley against accidental contact does not impose a duty to provide a guard that is effective against any contact but only to provide a guard in those areas where accidental contact could reasonably be expected. If this belt was so guarded, there was no violation of the specific safety standard."

I endorse the words and philosophy of Judge Strausbaugh in his dissent below, in which he set forth the appropriate standard for the specific safety requirements to be applied here:

"Ohio Adm. Code 4121:1-5-04(A) [*sic,* (C)(3)] provides that 'Vee belts and their pulleys, where exposed to contact, *shall be guarded.*' (Emphasis added.)

"The definition of '*guarded*' in the definition section, Ohio Adm. Code 4121:1-5-01(B)(17), provides: ' "Guarded" means that the object is covered, fenced, railed, enclosed, or otherwise shielded from *accidental* contact.' (Emphasis added.)

"If the design of the specific safety standard was to protect employees from their own 'negligence, folly or stupidity' as stated in the majority opinion, then the regulation should have been drafted to so state, instead of referring to 'accidental contact.' Inasmuch as the regulations must be strictly construed, it is manifestly unfair to the employer to be held liable for a penalty of which it has not been apprised. Here, the belt was guarded against accidental contact. The employee had to *intentionally* reach around the three-sided guard to come in contact with the belt. The proximate cause of the injury was not that the belt was unguarded, but was because of the intentional conduct of the employee which the regulation did not require the employer to guard against." (Emphasis *sic*.)

For the foregoing reasons, I would reverse the judgment of the court of appeals.

MOYER, C.J., and WRIGHT, J., concur in the foregoing dissenting opinion.